**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL PRICE,<br><br>    Plaintiff,<br><br>    v.<br><br>ROVER GROUP, INC. AARON EASTERLY, MEGAN QUINN SIEGLER, ADAM H. CLAMMER, JAMIE COHEN, VENKY GANESAN, GREG GOTTESMAN, SCOTT JACOBSON, KRISTINA LESLIE, and ERIK PRUSCH,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Price ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Rover Group, Inc. ("Rover Group" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by affiliates of funds managed by Blackstone, Inc. ("Blackstone").[1]

2.      On November 29, 2023, Rover Group entered into an Agreement and Plan of

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Merger (the "Merger Agreement") with Biscuit Parent, LLC ("Parent"), and Biscuit Merger Sub, LLC ("Merger Sub").[2] The Merger Agreement provides that Blackstone will acquire Rover Group, with each share of Rover Group common stock being converted into the right to receive $11.00 in cash.

3.  The Company's corporate directors subsequently authorized the January 22, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.  It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Parent and Merger Sub are affiliates of funds managed by affiliates of Blackstone.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for February 22, 2024.

## JURISDICTION AND VENUE

6. This Court has juri22iction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and is and has been at all times relevant hereto, the owner of Rover Group common stock.

10. Defendant Rover Group is a Delaware corporation with its principal executive offices located at 720 Olive Way, 19th Floor, Seattle, Washington 98101. Rover's shares trade on the Nasdaq Global Market under the ticker symbol "ROVR." Rover is the world's largest online marketplace for pet care. The Company connects pet parents with caring pet care providers who offer overnight services, including boarding and in-home pet sitting, and daytime services, including doggy day care, dog walking, drop-in visits, and dog training. Rover operates in the U.S., Canada, the United Kingdom, Spain, France, Sweden, Italy, Germany, Norway, and the Netherlands.

11.     Defendant Aaron Easterly is a co-founder of the Company and has been Chairman of the Board, Chief Executive Officer and a director of the Company at all times relevant hereto.

12.     Defendant Megan Quinn Siegler is and has been Lead Independent Director of the Company at all times relevant hereto.

13.     Defendant Adam H. Clammer is and has been a director of the Company at all times relevant hereto.

14.     Defendant Jamie Cohen is and has been a director of the Company at all times relevant hereto.

15.     Defendant Venky Ganesan is and has been a director of the Company at all times relevant hereto.

16.     Defendant Greg Gottesman is and has been a director of the Company at all times relevant hereto.

17.     Defendant Scott Jacobson is and has been a director of the Company at all times relevant hereto.

18.     Defendant Kristina Leslie is and has been a director of the Company at all times relevant hereto.

19.     Defendant Erik Prusch is and has been a director of the Company at all times relevant hereto.

20.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.     On November 29, 2023, the Company announced in relevant part:

SEATTLE, Nov. 29, 2023 (GLOBE NEWSWIRE) -- Rover Group, Inc. (Nasdaq: ROVR) ("Rover" or the "Company"), the world's largest online marketplace for pet care, today announced that it has entered into a definitive agreement to be acquired by private equity funds managed by Blackstone ("Blackstone") in an all-cash transaction valued at approximately $2.3 billion.

Under the terms of the agreement, Rover stockholders will receive $11.00 per share in cash, representing a premium of approximately 61% to the volume weighted average share price of Rover's Class A common stock over the 90 trading days ending on November 28, 2023.

"We are thrilled for this next chapter in the Rover story and look forward to the partnership with the Blackstone team, who share our conviction, excitement and strategic vision," said Aaron Easterly, co-founder and CEO of Rover. "Blackstone brings deep expertise in partnering with innovative technology companies, and with their support and collaboration, we plan to continue investing in our business in service of our mission to make it possible for everyone to experience the unconditional love of a pet in their lives.  This transaction delivers immediate and compelling value to Rover stockholders, and is a testament to the commitment and hard work of our team and an exciting milestone for Rover."

Sachin Bavishi, a Senior Managing Director at Blackstone, said, "We are excited to partner with Aaron and the exceptional Rover team, whose vision, creativity and data-driven approach have built the Company into an industry leader.  Our investment highlights Blackstone's high-conviction focus on backing rapidly growing digital businesses and supporting talented entrepreneurs with extensive resources to take advantage of transformational growth opportunities.  We look forward to working with Rover as they continue working to drive innovation for pet owners and providers."

Tushar Gupta, a Principal at Blackstone, added, "We believe Rover has a significant runway for growth as pet owners increasingly place a premium on high-quality care, flexibility and convenience.  We look forward to partnering with management to build upon their leading online marketplace and leveraging Blackstone's extensive expertise and resources to support the Company's continued expansion as a private company."

Rover was created to provide an alternative to relying on friends, family, neighbors, and/or boarding facilities for pet care when traveling away from

home.  Over the years, offerings on Rover have grown to include five core services addressing daytime and overnight needs.  From its inception through September 30, 2023, over 93 million services have been booked by more than 4 million pet parents on Rover with more than 1 million pet care providers paid across North America and Europe.  Through its platform and mobile app, pet parents can easily discover, book, re-book, pay, and review loving pet care providers online.  Rover eliminates many of the barriers of pet ownership, enabling the Company's mission to make it possible for everyone to experience the unconditional love of pets.

Rover's partnership with Blackstone reflects a shared belief in the future growth potential of the industry and long-term vision to build on Rover's leadership position in the market.  Blackstone's investment aims to help enable Rover to further accelerate investment priorities, expand its global footprint, and fuel expansion initiatives.

Transaction Terms

The merger agreement includes a customary 30-day "go-shop" period expiring on December 29, 2023.  During this period, Rover and its advisors will be permitted to solicit, consider and negotiate alternative acquisition proposals from third parties.  The Rover board of directors will have the right to terminate the merger agreement to enter into a superior proposal, subject to the terms and conditions of the merger agreement.  There can be no assurance that this "go-shop" process will or will not result in a superior proposal, and Rover does not intend to disclose related developments unless and until it determines that such disclosure is appropriate or otherwise required.

The transaction is currently expected to close in the first quarter of 2024, subject to the approval of Rover's stockholders and the satisfaction of required regulatory clearances and other customary closing conditions.  The Rover board of directors approved the merger agreement and recommended that Rover stockholders approve the transaction and adopt the merger agreement.  Closing of the transaction is not subject to a financing condition.

Upon completion of the transaction, Rover's Class A common stock will no longer be publicly-listed and Rover will become a privately held company.  The Company will continue to operate under the Rover name and brand.

Advisors

Goldman Sachs & Co. LLC is acting as lead financial advisor to Rover, and Centerview Partners LLC is also acting as a financial advisor to Rover and delivered a fairness opinion to Rover's Board of Directors with respect to the proposed transaction.  Wilson Sonsini Goodrich & Rosati, Professional Corporation is acting as legal counsel to Rover.

Evercore is acting as lead financial advisor and Moelis & Company LLC is also acting as a financial advisor to Blackstone, and Kirkland & Ellis LLP is acting as legal counsel to Blackstone.

**The Materially Incomplete and Misleading Proxy Statement**

22. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on January 22, 2024. The Proxy Statement, which recommends that Rover Group stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Rover Group; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Centerview Partners LLC ("Centerview"); and (c) potential conflicts of interest faced by Goldman Sachs and Centerview.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts*

23. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including the projected Unlevered Free Cash Flow excluding Net Operating Losses and Unlevered Free Cash Flow for Rover Group's "October 2023 long-term plan."[4]

24. Similarly, the Proxy Statement fails to disclose the line items underlying projected: (a) Adjusted EBITDA; (b) Unlevered Free Cash Flow excluding Net Operating Losses; and (c) Unlevered Free Cash Flow, each for Rover Group's "November 2023 long-term plan."

---

[4] The Proxy also fails to disclose the line items under these projected metrics, as well as the line items underlying the Company's projected Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Goldman Sachs and Centerview*

25. The Proxy Statement fails to disclose material information concerning the financial analyses prepared by Goldman Sachs and Centerview.

26. As to the *Illustrative Discounted Cash Flow Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) its cash and cash equivalents and investment in affiliates; (c) the net present value of cash tax savings from the Company's net operating losses; and (d) Rover Group's fully diluted outstanding shares.

27. As to the *Illustrative Present Value of Future Share Price Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose: (a) EBITDA for fiscal years 2025 through 2026; (b) cash and cash equivalents and investment in affiliates as of December 31, 2024 and December 31, 2025; and (c) the projected year-end fully diluted outstanding shares of the Company's common stock as of December 31, 2024 and December 31, 2025.

28. As to the *Selected Public Company Comparables Analysis* performed by Goldman Sachs, the Proxy Statement fails to disclose the individual financial metrics for each company.

29. As to the *Discounted Cash Flow Analysis* performed by Centerview, the Proxy Statement fails to disclose: (a) the projected next-twelve months EBITDA of the Company used to calculate Rover Group's terminal values; (b) its terminal values; (c) the Company's estimated net debt as of September 30, 2023; and (d) its fully diluted outstanding shares.

30. As to the *Selected Public Company Analysis* and *Selected Transaction Analysis* performed by Centerview, the Proxy Statement fails to disclose the respective financial metrics for each company and transaction analyzed by the financial advisor.

31. As to the *Analyst Price Target Range Analysis* performed by Centerview, the Proxy Statement fails to disclose the individual price targets observed and their corresponding sources.

***Material Misrepresentations and/or Omissions Concerning Potential Conflicts of Interest Affecting Goldman Sachs and Centerview***

32. The Proxy Statement fails to disclose potential conflicts of interest affecting Rover Group's financial advisors, including whether Goldman Sachs and Centerview have performed any services for any of the Company's stockholders that executed voting and support agreements with Blackstone.[5]

33. The Proxy Statement also fails to disclose whether Goldman or Centerview have held discussions with Blackstone about rolling over a portion of their shares of Company common stock, including, but not limited to, Madrona Ventures, Menlo Ventures, Foundry Ventures, and the True Wind Parties (each as defined in the Proxy Statement), or any of their respective affiliates, in the two years prior to rendering their fairness opinions and, if so, the details of the services provided and the fees received for such services.

34. The omission of the above-referenced information renders statements in the "Unaudited Prospective Financial Information," "Opinion of Goldman Sachs," and "Opinion of Centerview Partners" sections of the Proxy Statement materially incomplete and misleading

---

[5] Certain Rover stockholders that collectively hold approximately 39.6% of the Company's common stock have entered into voting agreements with Blackstone.

9

in contravention of the Exchange Act.

35.    Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Rover Group**

36.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37.    The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Rover Group is liable as the issuer of these statements.

38.    The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39.    The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote

on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Rover Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Rover Group and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

11

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

  A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company stockholders;

        B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

        C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

        D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        E.    Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 1, 2024        **LONG LAW, LLC**

        By:  */s/ Brian D. Long*
        Brian D. Long (#4347)
        3828 Kennett Pike, Suite 208
        Wilmington, DE 19807
        Telephone: (302) 729-9100
        Email: BDLong@LongLawDE.com

        *Attorneys for Plaintiff*